SACK, Circuit Judge,
concurring.
I am in full agreement with the judgment of the Court. I write only to express my concern about parts of section 2.A of the majority opinion.
I would have much preferred that the majority confine itself to a more narrow and straightforward analysis of the gravity-of-the-offense aspect of the Eighth Amendment inquiry. That analysis is already fully included as part of the section with which I take issue, as follows:
Starting with the gravity of the offense at issue, there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts and scholars all[1] recognize, child pornography crimes at them core demand the sexual exploitation and abuse of children. Not only are children seriously harmed — physically, emotionally, and mentally — in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child’s exploitation and abuse. See New York v. Ferber, 458 U.S. 747, 757-59 & nn. 9-10 [102 S.Ct. 3348, 73 L.Ed.2d 1113] (1982) (citing congressional and scholarly reports, and court cases).[2]
[Precisely because the prevention of such exploitation and abuse is “a government objective of surpassing importance,” New York v. Ferber, 458 U.S. at 757 [102 S.Ct. 3348]; see id., at 756-57 [102 S.Ct. 3348] (“It is evident beyond the need for elaboration that a State’s interest in safeguarding the physical and psychological well-being of a minor is compelling.” (internal quotation marks omitted)), we cannot view the distribution of child pornography, however accomplished, as anything but a serious crime that threatens real, and frequently violent, harm to vulnerable victims, cf. Harmelin v. Michigan, 501 U.S. [957] at 1002-03 [111 S.Ct. 2680, 115 L.Ed.2d 836] (1991) (Kennedy, J., concurring) (observing that characterization of drug possession with internet to distribute as a “nonviolent and victimless” crime “is false to the point of absurdity” given “pernicious effects” of drug use).
Maj. op. at 216-18.
Perhaps we cannot conclude from that excerpt alone that the sentence in this case was “fair” — but that issue is simply not posed by this Eighth Amendment inquiry. It seems to me, though, that the language does answer clearly and completely the legal question that is before the Court: Whether this is the “rare case” in which the comparison between crime and punishment leads “to an inference of gross dis-proportionality.” See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2022, 176 L.Ed.2d 825 (2010) (quoting Harmelin v. Michigan, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment in part)). It is not. And, that question having been answered, I think the *232 majority should have stopped there, and proceeded to the other legal issues that have been raised.
Instead, the majority’s opinion includes graphic descriptions of one of the pornographic images in evidence, id. at 216-17, and discusses the effect on child pornography of the “recent digital revolution,” id. at 217-18; explains what it views as the irrelevance of “Reingold’s professed ... principal interest in receiving rather than distributing child pornography,” id. at 217; describes the nature of “GigaTribe” and the defendant’s interaction with it, id. at 218; and makes reference to the defendant’s sexual molestation of his minor half-sister,[3] id. at 218-19.
These may be interesting observations, but are they necessary to the resolution of this appeal? I hardly think so. Suppose the facts were to the contrary. Suppose the pornographic images were somewhat less graphic than the one described; that they were received and distributed as photographs (as pornographic material was in Ferber) and not electronically through file sharing on the Internet; that Reingold did not allege that his principal interest was in receiving and not distributing the pornographic images; and that he never ever so much as touched a female human being other than his mother. Are we to believe that on any such or vaguely similar facts and in light of the law reflected in the two paragraphs of its opinion set forth in haec verba above, the majority could or would have decided that a five year sentence here did constitute “cruel and unusual punishment”?
I don’t think so. And, assuming I am correct, the verbiage to which I take exception is unnecessary to the consideration and resolution of this case. I would therefore have omitted it.
The omission would not be based on any general view on my part that a judge must be averse to saying more in an opinion than is strictly necessary. I do not think so.[4] But to borrow a phrase from death-penalty cases and twist it, child pornography is different.[5] Focusing on subjects that are associated with our most powerful taboos, these cases evoke uniquely strong, if differing, emotional, moral, and cultural[6] reactions from judges, necessarily based on the differing beliefs, values, sensitivities, and life experiences of those judges.[7]
*233 I have no doubt that there are appeals in such cases that require the reviewing court to engage in a carefully, even painfully, detailed analysis of the child pornography and abuse at issue. This is not one of them. And when we go beyond what is necessary to resolve this sort of case, by setting forth in unnecessary or irrelevant detail the circumstances or other aspects of the crime, we risk the appearance of explicitly or implicitly voicing our moral indignation rather than exercising our legal judgment, which is of course our only charge.
I would have preferred then, as I have said, for the majority opinion to have hewed more rigorously to the line of legal inquiry in the matter before us.
I also concur with the majority as to the use of Reingold’s name in the caption of this case. Whether I would do so were his name not already on the record, I am not quite sure. Although I am of the general view that the more about an appeal that is public the better, including of course the names of the parties, the dissection of Reingold’s mental condition and the nature of his behavior is set forth in such unusually meticulous detail in the district court’s lengthy opinion that I can understand that court’s decision to identify him by his initials only. But the fact that his name is not only available in the files of the district court and this court, it can also be found on-line using Google — attributed on the website to Reuters — seems to me to make the decision much easier. See http://www. caringforourchildrenfoundation.org/?p= 8932 (last visited Sept. 20, 2013).

. I might have said “many scholars” on the theory that one is likely to find a scholar who disagrees with nearly any point of view.

. The victims’ statements in this case, which are set forth at length in the district court's opinion, powerfully illustrate the nature and severity of their injuries resulting from the receipt and dissemination of the material at issue. See United States v. C.R., 792 F.Supp.2d 343, 378-404 (E.D.N.Y.2011).

. That is the characterization used by the government. Gov. Br. at 6.

. Even if we were to characterize these additional statements as dicta, our colleague Judge Leval was surely right when he wrote: "[DJictum can serve useful purposes. We have no need to purge dictum from our opinions and we shouldn't be embarrassed by its presence." Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L.Rev. 1249, 1282 (2006).

. Cf. Harmelin, 501 U.S. at 994, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment in part) ("Proportionality review is one of several respects in which we have held that 'death is different’. ...”)

. See generally, e.g. Amy Adler, The Perverse Law of Child Pornography, 101 Colum. L.Rev. 209 (2001); see also id. at 211 (referring to "child pornography law ... [as] caught up in a cultural maelstrom”).

. This not a criticism; it is an observation. And the issues I perceive are hardly unique to the legal arena, as illustrated by a recent film review in The New York Times, which begins: "Violence against children strikes most people as a uniquely terrible phenomenon, which may be why filmmakers are so fond of it.” A.O. Scott, After Two Children Vanish, Agony Begets Recklessness, N.Y. Times, September 20, 2013, p. C 12. It should be obvious in any event that I am not suggesting that the majority's judgment was compromised by the nature of the case or any personal reaction to it — after all, I agree with the judgment of the Court.